**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KEVIN RAY CAVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-20-041-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Kevin Ray Caves (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 49 years old at the time of the ALJ's latest decision. He has a high school education and past relevant work in a composite job of heavy equipment operator and landfill supervisor. Claimant alleges an inability to work beginning on February 13, 2013, due to limitations resulting from a neck injury, blindness in the left eye, back pain, nerve damage on the right side of his face and his shoulder, arthritis in the hands and shoulders, bad knees, and sleeping problems.

## Procedural History

On February 26, 2013, Claimant protectively filed his applications for a period of disability and disability insurance

benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After a hearing, a decision denying benefits, and a denial of a request for review by the Appeals Council, the case was appealed to this Court, and at Defendant's request, the case was reversed and remanded for further proceedings on March 12, 2018. (Tr. 533-34). A second hearing was held before ALJ Clifford Shilling on March 11, 2019, in Fort Smith, Arkansas. Claimant was present and testified. After the hearing, the case was reassigned to ALJ Matthew Allen, who entered an unfavorable decision on January 14, 2020. The decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error by (1) improperly excluding limitations at step two, (2) excluding proven

limitations from the RFC (with subparts), and (3) improperly utilizing the testimony of the vocational expert ("VE").

### Step Two Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of left eye blindness, obesity, right shoulder degenerative joint disease post surgery, mild degenerative disc disease of the cervical spine, and mild degenerative disc disease of the lumbar spine. (Tr. 510). He determined Claimant could perform light work with additional limitations. Claimant could lift and/or carry twenty pounds occasionally and lift and/or carry ten pounds frequently. He could stand and/or walk and sit for six hours in an eight-hour workday with normal breaks. Claimant could push/pull within limits pursuant to lift/carry limitations, but he could push/pull only occasionally on the right. He could perform no job that would require depth perception, and peripheral acuity on the left was occasional. Claimant could perform occasional reaching (including overhead) with the right upper extremity and frequent handling and fingering bilaterally. (Tr. 513).

After consultation with a VE, the ALJ determined Claimant could perform the representative jobs of blending tank tender helper, cotton classer aide, and conveyor-line bakery worker, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26). As a result, the ALJ concluded Claimant had not

been under a disability since February 13, 2013, through the date of the decision. (Tr. 520).

Claimant contends the ALJ's determination that his carpal tunnel syndrome, facial pain, headaches, right knee pain, hand pain, depression, and anxiety are not severe impairments is unsupported by the evidence. He maintains that the impairments meet the "de minimis" standard at step two and clearly affect his ability to work.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250, at *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends his carpal tunnel syndrome, facial pain, headaches, right knee pain, hand pain, depression,

and anxiety should have been included as severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28, 1985 WL 56856 (Jan. 1, 1985). At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment which warrants disability benefits is one that "results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Since the ALJ did not deny benefits at step two based upon the lack of any severe impairments, his failure to find Claimant's impairments of carpal tunnel syndrome, facial pain, headaches, right knee pain, hand pain, depression, and anxiety as severe, does not constitute reversible error.

## RFC Assessment

Claimant argues the ALJ did not consider all of his impairments in the RFC assessment. He first contends that the ALJ failed to include mental limitations from his mental impairments in the RFC. Claimant asserts such limitations are warranted because of his long-standing mental health treatment, beginning in 2015.

When determining Claimant's mental impairments of depression and anxiety were nonsevere, the ALJ discussed the mental functional areas when considering the listings, and he determined Claimant had mild limitations in understanding, remembering, or applying

8

information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself. In reaching these conclusions, the ALJ discussed in detail the consultative psychologist's examination, which indicated a normal mental status, except for a "somewhat dysphoric" mood. (Tr. 511-12, 819-23). He further discussed records of Claimant's therapy for depression, noting he began therapy in 2015 and that later records from 2018 reflected Claimant took medication, to which Claimant reported a positive effect, and his mental status examinations, including more recent exams, were normal. The ALJ noted Claimant had reported good, stable mood on treatment and that in 2019, records indicated his depression was "under control with therapy and current medication regimen." (Tr. 511, 664, 1197-1215, 973-75, 1021, 1056-60, 1086-1104, 1118-23, 1224, 1226, 1233, 1246-47).

When assessing limitations for the RFC, the ALJ considered the opinion of Claimant's mental health care provider, Lindsay Romine, APRN, who completed a mental medical source statement on February 8, 2019. (Tr. 1106-1108). He specifically noted her findings of marked limitations in Claimant's ability to interact appropriately with the public, supervisors, and co-workers, and his marked impairment with responding appropriately to usual work situations and to changes in a routine work setting. Although Ms. Romine assessed the limitations based upon mood swings, pain, and poor sleep, the ALJ found the opinion was entitled to "no weight,"

because it was "unsupported by the objective evidence, which does not show the [C]laimant has persistent abnormal affective findings, particularly of a severity sufficient to produce marked limitations across all aspects of social functioning as indicated in the opinion." The ALJ noted that "[C]laimant's treatment records show he reported improvement with treatment and good, stable mood on medication. Most mental status examinations in evidence make no mention of any abnormal mental status examination findings at all." The ALJ concluded that "[a] marked inability to respond appropriately to usual situation and changes in routine is also not evident on the record." (Tr. 518).

This Court finds no error in the ALJ's evaluation of Claimant's mental impairments in the RFC assessment. The ALJ considered the evidence, including the opinion of Ms. Romine, and properly explained in the decision why the opinion was entitled to no weight.[2]

Claimant also argues that the evidence supports that he cannot perform the physical requirements of light work. As part of this argument, he asserts the ALJ failed to properly consider the examination or opinion of consultative physician, Conner

---

[2] Claimant contends that the ALJ must evaluate the medical source opinions pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. However, the new regulations are applicable to claims filed after March 27, 2017. Claimant's applications were filed on February 26, 2013, making them subject to consideration under 20 C.F.R. §§ 404.1527, 416.927.

10

Fullenwider, M.D. Dr. Fullenwider conducted a consultative examination of Claimant on November 18, 2017. Claimant described his issues as neck, back, and shoulder pain and arthritis, including pain, stiffness, swelling, decreased mobility, numbness, right shoulder swelling, muscle cramps and spasms, redness, heat, fatigue, and weakness. He indicated his pain was between a five and ten on a scale of ten and that his problems affected his ability to work secondary to increased pain with activity and decreased mobility. Dr. Fullenwider noted that Claimant reported functional limitations, secondary to leg pain and muscle weakness, including sitting for forty-five minutes, standing for thirty minutes, and walking one half block. He could reportedly lift and carry five pounds repetitively and ten pounds occasionally on the left side only. He was unable to lift and carry any weight on the right side.

Upon physical examination, Dr. Fullenwider found Claimant had left eye blindness with light perception only, motion crepitus of his right knee, an asymmetric, slow, unsteady, limping gait, muscle bulk and tone within normal limits, some decreased muscle strength in deltoids (5/3), biceps (5/4), triceps (5/4), hand grip (5/4), leg flexion (5/4), and leg extension (5/4), and decreased sensation in the C7-C8 distribution bilaterally. He observed Claimant button and unbutton a shirt, pick up and grasp a pen and write a sentence, and lift, carry, and handle personal belongings. Claimant was

11

unable to squat and rise from the position. He could rise from a sitting position without assistance, but he had difficulty getting up and down from the exam table. Claimant was unable to walk on heels and toes, perform tandem walking, and stand or hop on either foot bilaterally. He could dress and undress "adequately well," and Claimant was described as "cooperative and gave good effort during the examination." As reflected on the range of motion evaluation chart, Dr. Fullenwider noted Claimant had a decreased range of motion in his back, neck, and right shoulder, motion crepitus of his right knee, decreased sensation in the C7-C8 distribution bilaterally, and decreased strength in his right upper extremity. Claimant exhibited pain with range of motion in the cervical and lumbar spine. He could not manipulate small objects or effectively grasp tools such as a hammer with his right hand. (Tr. 825-32).

An ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). An ALJ must provide specific, legitimate reasons for

rejecting any such opinion, and must give consideration to several factors in weighing a medical opinion. *Id*.

Moreover, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The only mention the ALJ made of Dr. Fullenwider's examination was a reference to Claimant's function report being inconsistent with functional limitations Claimant reported to Dr. Fullenwider during the exam. (Tr. 516). He made no mention of Dr. Fullenwider's examination findings, including a decrease in muscle strength, decreased sensation at C7-8 bilaterally, inability to heel/toe walk, tandem walk, and stand/hop on one foot, decreased range of motion in the right shoulder, neck, and back, and inability to manipulate small objects or grasp tools like a hammer with his right hand. The ALJ specifically discussed the consultative examination of Claimant from June 18, 2013, which included several examination findings inconsistent with Dr. Fullenwider's later examination. (Tr. 284-91, 515). It was error for the ALJ not to address Dr. Fullenwider's examination of Claimant in the decision.

Claimant also argues the ALJ improperly evaluated other medical opinions in the record regarding his physical limitations. Specifically, he asserts the ALJ failed to properly evaluate opinions from Sri Reddy, M.D., and Mark Rogow, M.D. However, because the ALJ's proper consideration of Dr. Fullenwider's consultative examination could affect the evaluation of the other medical opinions, the ALJ will need to reconsider them on remand.

Claimant further asserts that the ALJ failed to properly evaluate his subjective complaints. He contends that the ALJ improperly concluded that his limitations were not supported by his treatment history, and he failed to discuss many of the required factors. Because the evaluation of Claimant's symptoms is tied closely to the RFC determination, after properly considering the probative medical evidence of record, the ALJ should reconsider his assessment of Claimant's subjective symptoms on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

Because the ALJ's consideration of Dr. Fullenwider's examination may result in further limitations in the RFC, on remand, he should reassess his step-four findings, including his evaluation of Claimant's subjective complaints, and determine what work, if any, Claimant can perform.

### Step Five Determination

Claimant asserts the ALJ cannot deny benefits based upon the VE's testimony because the hypothetical questions to the VE failed to include all of Claimant's limitations.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court is remanding the case for the ALJ to re-evaluate the RFC based on the above-described deficiencies. Once the ALJ has addressed these deficiencies, he may be required to further modify the hypothetical questioning of the VE to accommodate any changes made to the RFC.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

15

applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 27th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE